William Elwood Davis, pro se.

**William Elwood DAVIS**

v.

**STATE OF MARYLAND.**

Civ. No. 16952.

United States District Court
D. Maryland.

Dec. 22, 1965.

THOMSEN, Chief Judge.

On or about November 22, 1965, Davis sent to the Clerk of this Court a paper entitled "William Elwood Davis, Petitioner, v. State of Maryland, Respondent", headed "Injunction", in which he sought release from his present confinement in the Baltimore City Jail on the grounds: "That the Maryland Judicial System is constituted, unconstitutionally with respect to the Federal constitution, and the Baltimore Grand Jury is constituted, unconstitutionally, with respect to the Maryland constitution; thus, the State's procedure, of indictment and trial are unconstitutional procedure, and is causing deprivation of Due Process and Equal Protection."

Under instructions from the Court, the Clerk returned the handwritten paper to Davis, and sent him the forms for "Petition for Writ of Habeas Corpus" required to be used in this Court, as in other United States District Courts, by persons seeking release from State confinement. On November 29 Davis returned the paper to the Clerk with the prayer for release eliminated, so that the only pray-

er is "that an injunction be issued to halt the aforementioned unconstitutional procedures". The claimed "unconstitutional procedure" is the prospective trial of plaintiff. He was originally indicted on September 7, 1965, but reindicted on November 2, 1965, following the decisions of the Court of Appeals of Maryland in Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965), and State v. Madison, Md., 213 A.2d 880 (1965). For a discussion of those cases see James Francis Smith v. Brough, Warden, D.Md., 248 F.Supp. 435 (1965), Daily Record, December 20, 1965.

Davis claims jurisdiction under the Civil Rights Act, 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983, and has filed an affidavit supporting his request for leave to proceed in forma pauperis.

■ Aside from the fact that this is a suit against the State of Maryland itself, which has not consented to be sued, the Supreme Court recently stated in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965):

"In Ex parte Young, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714], the fountainhead of federal injunctions against state prosecutions, the Court characterized the power and its proper exercise in broad terms: it would be justified where state officers ' * * * threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution * * *.' 209 U.S., at 156 [28 S.Ct. at 441]. Since that decision, however, considerations of federalism have tempered the exercise of equitable power, for the Court has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings. In Douglas v. City of Jeannette, 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324], for example, the Court upheld a district court's refusal to enjoin application of a city ordinance to religious solicitation, even though the ordinance was that very day held unconstitutional as so applied on review of a criminal conviction under it. Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105 [63 S.Ct. 870, 87 L.Ed. 1292]. Since injunctive relief looks to the future, and it was not alleged that Pennsylvania courts and prosecutors would fail to respect the Murdock ruling, the Court found nothing to justify an injunction. And in a variety of other contexts the Court has found no special circumstances to warrant cutting short the normal adjudication of constitutional defenses in the course of a criminal prosecution. In such cases it does not appear that the plaintiffs 'have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court.' Douglas v. City of Jeannette, supra, 319 U.S. at 164 [63 S.Ct. at 881]." 380 U.S. at 483–485, 85 S.Ct. at 1119–1120.

■ Plaintiff also has a remedy by way of habeas corpus in this Court after he has exhausted his State remedies. A suit for an injunction under the Civil Rights Act may not be used in place of a petition for a writ of habeas corpus to avoid the requirements laid down by the Supreme Court and the Fourth Circuit, as well as by this Court, that State prisoners exhaust all available State remedies before applying to Federal Courts

for release from their imprisonment. Johnson v. Walker, 5 Cir., 317 F.2d 418 (1963).

An injunction such as plaintiff seeks in this case would have to be issued by a three-judge court, 28 U.S.C.A. 2281. No request for the convening of a three-judge court has been made; if it were made, it would be denied.

Leave to file in forma pauperis is hereby granted, but the case is hereby dismissed for want of equity, because the Court is satisfied that the complaint alleges no ground upon which this Court can properly issue the injunction required or any other relief at this time.

The Clerk is instructed to mail a copy of this memorandum and order to plaintiff and a copy to the Attorney General of Maryland.