441 F.2d 558
 UNITED STATES of America ex rel. Michael KATZOFF, Petitioner-Appellee,
v.
Paul D. McGINNIS, Commissioner of Corrections of the State
of New York, and John T. Deegan, Warden of the
Auburn State Prison, Auburn, New York,
Respondents-Appellants.
 No. 255, Docket 35300.
 United States Court of Appeals, Second Circuit.
 Argued Sept. 17, 1970.
Decided March 29, 1971.
 
 Herman Schwartz, Buffalo, N.Y. (Lee Michaels, Auburn, N.Y., on the brief), for petitioner-appellee.
 Louis J. Lefkowitz, Atty. Gen. of N.Y. (Timothy F. O'Brien, Asst. Atty. Gen., on the brief), for respondents-appellants.
 Before FRIENDLY, SMITH and HAYS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Northern District of New York in an action brought by a state prisoner under 42 U.S.C. 1983 (1964). Following an evidentiary hearing, the district court found that the loss of 50 days of appellee's earned good behavior time was unconstitutionally imposed. The appellant Commissioner of Corrections of the State of New York was ordered to credit the 50 days of good behavior time to appellee and appellee was ordered released in accordance with the laws and regulations of New York. We reverse the judgment of the district court.
 
 
 2
 Appellee Katzoff was wentenced to three years imprisonment following his conviction in New York State court for illegal possession of a dangerous weapon. Under New York Correction Law 803 (McKinney's Consol.Laws, c. 43, 1968 & Supp. 1970) and Penal Law 70.30(4)(b), 70.40(1)(a) and (b) (McKinney's Consol.Laws, c. 40, 1967), prisoners are allowed to participate in a conditional release program by which they may earn up to 10 days per month good behavior time credit toward reduction of the maximum term of their sentences. Optimally a prisoner so electing may be released under the supervision of the Board of Parole after having served approximately two-thirds of his maximum sentence (i.e., 20 days out of every 30). Good behavior allowances, however, may be withdrawn at any time in whole or in part for bad behavior or for violation of institutional rules. N.Y. Correction Law 803(1) (McKinney 1968).
 
 
 3
 In January 1968 while incarcerated in Green Haven prison, Katzoff's diaries which he was keeping with the knowledge of the prison authorities were taken away from him and examined. Disciplinary charges were brought against him for describing Deputy Commissioner Cain as a 'creep' and a cigar-smoking S.O.B.' and for indicating in vulgar language his desire to have sexual intercourse with two nurses at the prison. Deputy Warden Gilligan deprived Katzoff of 30 days good time for these diary entries and confined him in segregation for 57 days. Katzoff ultimately lost 50 days earned good behavior time because of the diary entries-- 30 days penalty for his remarks as to Deputy Commissioner Cain and 20 days be not being able to earn any good time while in segregation.
 
 
 4
 The district court ruled, after holding an evidentiary hearing, that there was no regulation against the keeping of a diary (a fact conceded by the State) and that punishment for entries in a private diary violated appellee's constitutional rights to due process, equal protection of the law, and freedom of thought. The court also found that sending appellee to segregation for writing in his diary constituted cruel and unusual punishment and ordered that the prisoner be immediately credited with 50 days earned good time. Since this restoration of good time entitled Katzoff to immediate conditional release, the court on August 18, 1970 ordered entry of a judgment directing the prisoner's release within 2 days. Appellants' application to this court for a stay was denied after appellee agreed in writing that if the district court order were modified or reversed and resulted in additional time to be served, then appellee would surrender to serve such additional time.
 
 
 5
 We find it unnecessary to consider the merits of appellee's constitutional arguments, for we find that appellee has failed to exhaust his state remedies as required by 28 U.S.C. 2254(b) (Supp. 1959-1967) and therefore reverse the decision of the district court.
 
 
 6
 Although the district court stated that it regarded appellee's petition as alleging a violation of his civil rights and asking for a writ of habeas corpus only as incidental to the enforcement of any judgment which might issue, we find that appellee in seeking release from custody was in essence applying for a writ of habeas corpus. There is no basis for limiting the concept of habeas corpus to attacks on custody because of defects in the original coviction as distinguished from a failure to allow release according to law. 'Release from a penal custody is not an available remedy under the Civil Rights Act.' Peinado v. Adult Authority of Department of Corrections,405 F.2d 1185, 1186 (9th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 2116, 23 L.Ed.2d 755 (1969); Johnson v. Walker, 317 F.2d 418, 419-420 (5th Cir. 1963). In our recent opinion in Rodriguez v. McGinnis, Docket No. 34567, filed March 16, 1971, containing a similar application by prisoner, we stated that the 'present application, since it seeks release from custody is in fact an application for habeas corpus.'
 
 
 7
 As an application for a writ of habeas corpus, the petition is defective because there is no allegation that appellee exhausted his state remedies in accordance with the requirements of 28 U.S.C. 2254(b) (Supp. 1959-1967). Katzoff has made no application whatsoever to the state courts, and there is no showing that an adequate state remedy is not available. There is no reason to believe that the New York courts are not fully equipped decide whether New York prison officials may impose the discipline in question here under New York law (Correction Law 236 (McKinney 1968)), and the New York and Federal Constitutions. Appellee's argument that the proximity of the prisoner's release renders state processes ineffective to protect his constitutional rights assumes without justification that state courts will be less responsive to a constitutional claim than that federal courts. There is no authority for the proposition that the proximity of release relieves a prisoner of the exhaustion requirements of Section 2254(b).
 
 
 8
 Reversed.
 
 
 9
 J. JOSEPH SMITH, Circuit Judge (dissenting):
 
 
 10
 I respectfully dissent. I would not bar a civil rights action for failure to exhaust state remedies because of the exhaustion requirement of 28 U.S.C. 2254(b). The appellant is not attempting to challenge the validity of his sentence as in Johnson v. Walker, 317 F.2d 418 (5 Cir. 1963) or Peinado v. Adult Authority, 405 F.2d 1185 (9 Cir. 1969).
 
 
 11
 The recent in banc opinion of this court in Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), squarely holds that where a state prisoner is deprived of statutory good time as a penalty for his conduct, at least in a case involving first amendment rights, the federal courts have the power to order that it be restored. To make the availability of this remedy turn on the fortuitousness of the prisoner's timing in filing his section 1983 claim makes no sense in terms of either logic or judicial efficiency.
 
 
 12
 A civil rights plaintiff is entitled to choose a federal forum. If relief such as restoration of good time earned has the incidental effect of entitling him to immediate release, it should not deprive him of that choice. McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Bell v. Hood, 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Hancock v. Avery, 301 F.Supp. 786 (M.D.Tenn.1969); Edwards v. Schmidt, 321 F.Supp. 68 (W.D.Wisc.1971).