The State of Ohio *v.* Saulino.

[Cite as State v. Saulino (1971), 29 Ohio Misc. 25.]

(No. 9070—Decided June 3, 1971.)

Municipal Court of Struthers.

*Mr. Ted Macejko, Jr.*, for the state.
*Mr. Alan R. Kretzer*, for the defendant.

Kalafut, J. On February 26, 1971, Struthers Police Officer Valent W. Granchie, while on traffic duty in the city of Struthers, observed the defendant driving a truck.

On the left side of the truck, officer Granchie saw what purported to be an American flag painted across the entire side wall of said truck. In the field where the stars should be appeared a huge face of "Mickey Mouse."

This alleged flag measured forty-five inches in height by eighty-nine inches in length.

Officer Granchie arrested the defendant-driver, brought him to the police station and charged him with a violation of R. C. 2921.05. The affidavit reads as follows:

"* * * personally came Patrolman Valent Granchie, from the Struthers Police who, being duly sworn according to law, deposes and says that on or about the 26th day of February, A. D. 1971, at the State of Ohio, County of Mahoning, City of Struthers, *aforesaid, one; Frank Joseph Saulino did unlawfully defile or otherwise cast contempt*

*on the American Flag of the United States of America, contrary to and in violation of R. C. 2921.05.* * * *"

Defendant was arraigned on February 26, 1971, in open court and entered a plea of "not guilty." Bond was set at two hundred dollars.

Trial was set for March 31, 1971, but was continued at the request of defendant's counsel. Case was reset for trial on April 21, 1971.

On April 16, 1971, defendant's counsel filed the following documents:

A. Motion to suppress the evidence, as it was not predicated on a lawful arrest pursuant to R. C. 2935.03.

B. Motion to quash, alleging that the affidavit in the instant case is defective on its face and fails to state an offense.

C. Motion to dismiss and/or quash alleging that R. C. 2921.05 is unconstitutional on its face.

On the day set for trial the defendant filed the following additional documents in this court:

A. Supplemental memorandum in support of motion to quash, alleging the affidavit failed to charge an offense.

B. Memorandum in support of defendant's position that the statute in this case is unconstitutional.

On April 21, 1971, legal arguments were heard and evidence was taken on said motion.

The prosecuting attorney and defendant's counsel stipulated that the evidence taken in support and contra to the motion would be the evidence on trial and that all legal arguments and evidence taken at this hearing would be submitted to the court for a ruling upon the merits.

After arguments the court ruled that the arrest in question was lawful pursuant to R. C. 2935.03 and further ruled that the affidavit in question did state an offense pursuant to R. C. 2921.05. See *Cincinnati* v. *Lipps* (1971), 26 Ohio App. 2d 128.

The constitutionality of R. C. 2921.05 was taken under advisement and it is the purpose of this opinion to elaborate in this vein.

The Ohio statute under attack, R. C. 2921.05, reads as follows:

"No person shall contemptuously print, paint or place a word, figure, mark, picture, or design, upon a flag, standard, color, or ensign of the United States, or of this state, or cause it to be done, or expose or cause to be exposed, such flag, standard, color, or ensign upon which is printed, painted, or placed, or to which is attached or appended a word, figure, mark, picture, or design, or manufacture or have in possession an article of merchandise upon which is placed or attached a representation of such flag, standard, color, or ensign, or publicly mutilate, defile, deface, or cast contempt upon such flag, standard, color or ensign.

"Whoever violates this section shall be fined not more than one hundred dollars or imprisoned not more than thirty days, or both.

"As used in this section, 'flag,' 'standards,' 'color,' or 'ensign' includes any flag, standard, color, or ensign or a picture or representation thereof made of or represented on any substance, and purporting to be a flag, standard, color, or ensign of the United States, or this state or a picture or representation thereof, upon which is shown the colors, the stars, and the stripes in any number thereof, or which might appear to represent a flag, standard, color, or ensign of the United States or of this state."

A case of first impression involved painting a representation of the flag on bottles of beer under the Nebraska "Flag Desecration" statute. In *Halter* v. *Nebraska* (1907), 205 U. S. 34, the court stated at page 42 with reference to the constitutionality and purpose of such a statute as follows:

"So, a state may exert its power to strengthen the bonds of the Union and therefore, to that end, may encourage patriotism and love of country among its people. When, by its legislation, the state encourages a feeling of patriotism towards the nation, it necessarily encourages a like feeling towards the state. One who loves the Union will love the state in which he resides and love both of the common country and of the state will diminish in proportion as respect for the flag is weakened. Therefore, a state will be wanting in care for the well being of its people if it ignores the fact that they regard the flag as a symbol of

their country's power and prestige, and will be impatient if any disrespect is shown towards it. * * *

"Such a use tends to degrade and cheapen the flag in the estimation of the people, as well as to defeat the object of maintaining it as an emblem of national power and national honor. And we cannot hold that any privilege of American citizenship or that of any right of personal liberty is violated by a state enactment forbidding the flag to be used as an advertisement on a bottle of beer."

The flag as a means of expressing the hues of political dissent is a product of the past decade. It appears from a reading of the pertinent cases that one may by speech say anything he pleases about the flag. This conduct would be protected by the first amendment to the constitution of the United States. See *N. Y.* v. *Radich* (1970), 26 N. Y. 2d 114, 308 N. Y. S. 2d 846; *People* v. *Cowgill* (1969), 274 Cal. App. 2d 174; *State* v. *Saionz* (1969), 23 Ohio App. 2d 79.

The difficulty arises when an actor's *conduct* in relationship to the flag, as distinguished from speech, produces an effect upon the flag. Defense counsel throughout the United States vigorously contend that the conduct constitutes symbolic speech and therefore is protected under the first amendment. This distinction is often interpreted as a *dichotomy*.

Defense counsels argument in the instant case is buttressed upon the following:

A. The Ohio statute is too broadly drawn.

B. The statute suffers from the vice of vagueness.

C. That the defendant's act in question constitutes "symbolic speech" and is therefore protected by the first amendment.

Congress enacted in 1968 a Flag Statute, 18 U. S. Code, Section 700, which reads as follows:

"Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000.00 or imprisoned not more than one year, or both.

"The term 'flag' of the United States as used in this

section shall include any flag, standard, colors, ensign, or any picture or representation of either, or any part or parts of either, made of any substance and/or represented on any substance, of any size evidently purporting to be either of said flag, standard, colors, or ensign of the United States of America, or a picture or a representation of either, upon which shall be shown the colors, the stars and stripes, in any number of either thereof, or any part or parts of either by which the average person seeing the same without deliberation may believe the same to represent the flag, standard, colors, or ensign of the United States of America.

"Nothing of this section shall be construed as indication or intent on the part of congress to deprive any state, territory or possession or the Commonwealth of Puerto Rico of the jurisdiction over any offense for which it would have jurisdiction in the absence of this section."

A basic approach to our problem can be found in the case of *U. S. v. O'Brien* (1968), 391 U. S. 367. In that case the court held:

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the first amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This court has held that when 'speech' and 'non-speech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on first amendment freedoms."

The court in the *O'Brien* case, *supra*, laid down certain guidelines in activities of this nature. They are as follows:

A. A government regulation is sufficiently justified if it is within the constitutional power of the government.

B. If it furthers an important or substantial governmental interest.

C. If the governmental interest is unrelated to the suppression of free expression.

D. If the incidental restriction on alleged first amendment freedoms is no greater than is essential to the furtherance of that interest.

By careful reading of the Ohio statute in relationship to the federal Statute, it can readily be ascertained that both of the statutes *prohibit conduct* and not speech. In the instant case the entire charge against defendant is not directed against speech but his conduct, to wit: driving a truck on the streets of Struthers with a flag, purporting to be that of the United States, which measures forty-five inches by eight-nine inches, having a Mickey Mouse in the field where the stars belong.

Certainly no one can contend that the state of Ohio does not have the power and prerogative of passing a statute, drawn to prohibit acts of this nature. The second requirement set forth in *O'Brien* requires that it further an important or substantial interest. Such interest is present here, as the governmental interest in preserving the loyalty and patriotism represented by the flag. See *Halter* v. *Nebraska, supra.*

The third requirement of *O'Brien* is that the governmental interest be unrelated to the suppression of free expression. In the instant case defendant had the prerogative and right to express his views in any manner whatsoever by way of speech. The latter was not prohibited.

The fourth element in *O'Brien* is met in that the restrictions of first amendment rights are minimal.

For cases which follow the *O'Brien* test see *Joyce* v. *U. S.* (1969), 259 A. 2d 363 (District of Columbia Court of Appeals); *Hoffman* v. *U. S.* (1969), 256 A. 2d 567 (District of Columbia Court of Appeals); *U. S.* v. *Ferguson* (1969), 302 F. Supp. 1111 (U. S. District Court, N. D. Calif.).

Accordingly, this court rules that the Ohio statute, R. C. 2921.05, is constitutional and further that defendant did violate such statute and is accordingly found "guilty."

*Judgment accordingly.*